# EXHIBIT A

# Law Office of Jack Silver

708 Gravenstein Hwy North, Suite 407  Sebastopol, CA 95472-2808
Phone 707-528-8175  Email JSilverEnvironmental@gmail.com



*Via Certified Mail -*
*Return Receipt Requested*

October 13, 2021

Donald Carlo Ferrari, CEO and Registered Agent
Managing Agent
FERMA Corporation
6639 Smith Avenue
Newark, CA 94560-4219

**Re:  Notice of Violations and Intent to File Suit Under the Federal Water Pollution Control Act (Clean Water Act)**

Dear Mr. Ferrari and Managing Agent:

**NOTICE OF ALLEGED VIOLATIONS**

This Notice is provided on behalf of California River Watch ("River Watch") in regard to violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, ("CWA" or "the Act") that River Watch alleges are occurring at FERMA Corporation, located at 6655 Smith Avenue in Newark, California ("Facility"). Notice is being sent to you as the responsible owners, operators, lessees and/or managers of the Facility. This Notice addresses the violations of the CWA including violation of the terms of the General California Industrial Storm Water Permit, and the unlawful discharge of pollutants from the Facility into an Alameda County flood control ditch along Smith Avenue which discharges into Mowry Slough, a tributary of San Francisco Bay – all navigable waters of the United States.

CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless such discharge is in compliance with various enumerated sections of the Act. Among other things, CWA § 301(a) prohibits discharges not authorized by, or in violation of, the terms of an individual National Pollutant Discharge Elimination System ("NPDES") permit. States with approved NPDES permitting programs are authorized under the CWA to regulate stormwater discharges through permits issued to dischargers and/or through the issuance of a single, statewide industrial general permit ("IGP") applicable to all storm water dischargers. Pursuant to CWA § 402, the Administrator of the U.S. Environmental Protection Agency ("EPA") has authorized California's State Water Resources Control Board ("SWRCB") to issue NPDES permits including general NPDES permits in California.

Notice of Violations Under CWA - Page 1

The SWRCB elected to issue an IGP for industrial dischargers and issued NPDES Permit No. CAS000001, SWRCB Order No. 92-12-DWQ and amended it significantly on April 1, 2014 (effective July 1, 2015), pursuant to CWA § 402(p). To discharge stormwater lawfully in California, industrial dischargers must comply with the terms of the General Permit or have obtained an individual NPDES permit and be in compliance with its terms.

CWA § 505(b) requires a citizen to give notice of the intent to file suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Act. Notice must be given to the alleged violator, the EPA, and the state in which the violations occur. As required by the CWA, this Notice provides notice of the violations that have occurred and continue to occur at the Facility. Consequently FERMA Corporation (the "Discharger") is placed on formal notice by River Watch that after the expiration of sixty (60) days from the date of this Notice, River Watch will be entitled to bring suit in the United States District Court against the Discharger for continuing violations of an effluent standard or limitation, NPDES permit condition or requirement, or Federal or State Order issued under the CWA, as well as the failure to comply with water quality objectives established in the San Francisco Bay Regional Water Quality Control Board ("RWQCB-SF") Water Quality Control Plan or "Basin Plan" including but not limited California Toxics Rule ("CTR").

The CWA requires that any notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto shall include sufficient information to permit the recipient to identify the following:

**1.      The Specific Standard, Limitation, or Order Alleged to Have Been Violated**

To comply with this requirement, River Watch notices the Discharger of ongoing violations of the substantive and procedural requirements of CWA § 402(p) and violations of NPDES Permit No. CAS000001, (the General Permit) relating to operations taking place at the Facility including storm water disposal.

The Discharger, rather than seeking coverage under an individual NPDES permit, filed a Notice of Intent ("NOI") agreeing to comply with the terms and conditions of the General Permit. The SWRCB approved the NOI on January 12, 2017, and the Facility was assigned Waste Discharger Identification ("WDID") number 2 01I011218.

River Watch, on the basis of eye-witness reports, records publicly available, and/or records in the possession and control of the Discharger, contends that in the continuing fleet maintenance for heavy construction/demolition vehicles and material processing operations taking place at the Facility, the Discharger has failed and is failing to comply with the strict terms and conditions of the General Permit governing storm water discharges.

In addition to the alleged violations of the terms and conditions of the General Permit, River Watch alleges violations of discharge prohibitions contained in the RWQCB's Basin Plan, which are incorporated by reference as part of the compliance obligations imposed on the Facility under the General Permit.

**2.     The Activity Alleged to Constitute a Violation.**

Having agreed to the terms of the General Permit, the Discharger has a continuing burden to demonstrate compliance with each applicable provision of the General Permit. River Watch alleges the following actions and inactions as violations of the General Permit:

   A.     <u>Failure to Comply with General Permit Storm Water Sampling Requirements</u>

Under the General Permit, the Discharger is required to comply with the following:

i. "Collect and analyze storm water samples from two (2) Qualifying Storm Events("QSEs") within the first half of each reporting year (July 1 to December 31), and two (2) QSEs within the second half of each reporting year (January 1 to June 30)" (General Permit XI.B.2).

River Watch, following review of documents on file with the SWRCB's Stormwater Multiple Application and Report Tracking System ("SMARTS") reporting database, contends the Discharger has not performed the number of sampling events required under General Permit Section XI.B.2.i, despite the occurrence of QSEs, during Annual Reporting Years 2018-19, 2017-18, and 2016-17. In the Discharger's 2020-2021 Annual Report, in response to question 3. "Did you sample the required number of Qualifying Storm Events during the reporting year for all discharge locations, in accordance with Section XI.B," the response was No and the explanation was "There was not enough run off to facilitate collection of the required number of Qualifying Storm Events during the reporting year." *See* 2020-2021 Annual Report, Event ID # 1063342. In the Discharger's 2019-2020 Annual Report, in response to question 3. "Did you sample the required number of Qualifying Storm Events ("QSE") during the reporting year for all discharge locations, in accordance with Section XI.B," the response was No and the explanation was, "There was not enough run off to facilitate collection of a 2nd sample during the first half of the reporting year, between July and December. Shelter in place mandates prevented collection of the 2 samples required during the 2nd half of the reporting year, between January and June." *See* 2019-2020 Annual Report Event ID # 980229.

River Watch contends there was sufficient rainfall in the City of Newark during the Annual Reporting Years to create 4 QSE discharges at the Facility reportable for each year over a 2-year period. This analysis is supported by actual rain data as well as sampling reviewed from other industrial facilities in the area which did comply, and were able to sample runoff for the 4 QSEs that are required under the IGP. Thus, the Discharger violated section XI.B.2 of the General Permit by failing to collect and analyze the required number of storm water samples.

   B.     <u>Failure to Sample for Parameters Related to Receiving Waters Listed as Impaired Under CWA § 303(d).</u>

Under Section XI B.6.e. of the General Permit, a discharger must analyze all collected samples for "Additional applicable industrial parameters related to receiving waters with 303(d)

Notice of Violations Under CWA - Page 3

listed impairments or approved TMDLs based on the assessment in Section X.G.2.a. ix. Test methods with lower detection limits may be necessary when discharging to receiving waters with 303(d) listed impairments or TMDLs".

The Discharger's industrial activities taking place at the Facility include fleet maintenance for heavy construction/demolition vehicles and related equipment…," including, "A limited amount of material processing occurs onsite, in which used structural steel and aluminum are hydraulically compressed into transportable blocks for recycling." *See* FERMA's Revised 2020 Storm Water Pollution Prevention Plan ("SWPPP") *Site Description*, pg. 5.

The Facility discharges into an Alameda County flood control ditch along Smith Avenue which discharges into Mowry Slough, a tributary of (south) San Francisco Bay. Additionally, the RWQCB-SF's CWA § 303(d) list of impaired waterbodies identifies southern San Francisco Bay as impaired for chlordane, DDT, dieldrin, dioxin compounds (including 2,3,7,8-TCDD), furan compounds, mercury, PCBs, and selenium. However, there is no identification of these additional parameters in the SWPPP, nor any determination as to whether there are industrial activities taking place at the Facility that could contribute to an exceedance of a water quality objective for those parameters. Furthermore, the Discharger asserts, "As a pertinent fact relating to General Permit, the subject site is not known to involve runoff discharges into a named or otherwise designated CWA Section 303(d) listed receiving water that is impaired for turbidity, sediment, or silt: therefore, this SWPPP does not require sampling of a receiving water body. Technically, the subject site discharges into waters of the San Francisco Bay, which is not listed." *See* SWPPP, Section IV-A8, pg. 24. Therefore, the SWPPP fails to demonstrate compliance with Section XI B.6.e. of the General Permit.

      C.      <u>Failure to Prepare and Implement an Adequate SWPPP</u>

The General Permit requires the preparation, implementation, review, and update of an adequate SWPPP which must comply with the standards of Best Available Technology ("BAT") and Best Conventional Pollutant Control Technology ("BCT").

The General Permit requires dischargers to implement Best Management Practices ("BMPs") when necessary to support attainment of water quality standards. The use of BMPs to control or abate the discharge of pollutants is authorized by 40 C.F.R. §122.44(k)(3) because numeric effluent limitations are infeasible, and implementation of BMPs is reasonably necessary to achieve effluent limitations and water quality standards, and to carry out the purposes and intent of the Act. (40 C.F.R. §122.44(k)(4).)

Compliance with the monitoring and reporting program and the requirement to implement effective BMPs is central to an efficacious General Permit program. The General Permit has required all non-exempt facilities to collect and accurately analyze samples from storm events, and implement effective BMPs detailed in the SWPPPs for the facilities that are adequate in reducing or preventing pollutants in storm water discharges and authorized non-storm water discharges.

Discharges from the Facility site contain documented levels of zinc, iron, TSS and aluminum which adversely affect the waters of the United States identified in this Notice. River Watch, following review of documents on file with the SWRCB's SMARTs reporting database, contends the Discharger has not fully developed and/or adequately implemented a SWPPP for operations at the Facility as evidenced by the fact that the Discharger has failed to reduce pollutants in storm water to below water quality objectives or standards. A review of the Discharger's Self- Monitoring Reports demonstrates discharges continue from the Facility to the Alameda County flood control ditch exceeding EPA benchmarks and Numeric Action Levels ("NALs") for zinc, iron, TSS and aluminum.  Levels of copper and zinc also exceed the CTR limits.  The Discharger's most recent SWPPP provides, "Site drainage is controlled by specially-graded asphalt and concrete pavements that drain to engineered collection points. Property boundaries are protected from surface run-on and runoff by curbs and vegetated zones. No significant uncontrolled drainage either onto or off of the property is allowed." *See* SWPPP, section I-D., pg. 7.  Despite these assertions, the aforementioned pollutants continue to be discharged from the Facility indicating a failure by the Discharger to implement adequate BMPs.

A review of the Discharger's reports on the SWRCB's SMARTS database for Annual Reporting Years 2018-19, 2017-18, and 2016-17, identifies the following exceedances of the NAL and/or CTR limits:

**Reporting Period (2018-2019)**              **Event ID# / SMARTS Attachment ID#**

**Copper, Total**
01/16/19 - 0.016 mg/L                          1099209 / 2586941
010/7/19 - 0.0072 mg/L                         1033623 / 2323266
11/29/18 - 0.064 mg/L                          1030120 / 2302831

**CTR limit is 0.013 mg/L**

**Zinc, Total**
01/16/19 - 0.31 mg/L                           1099209 / 2586941
01/07/19 - 0.13 mg/L                           1033623 / 2323266
11/29/18 - 0.73 mg/L                           1030120 / 2302831

**Annual NAL is 0.26 mg/L**
**CTR limit is 0.12 mg/L**

**Iron, Total**
01/16/19 - 1.8 mg/L                            1099209 / 2586941
11/29/18 - 29 mg/L                             1030120 / 2302831

**Annual NAL is 1.0 mg/L**

**TSS**
11/29/18 - 570 mg/L                                1030120 / 2302831

**Annual NAL is 100 mg/L**

**Reporting Period (2017-2018)**

**Copper, Total**
03/13/18 - 0.014 mg/L                              996823 / 2135852
11/16/17 - 0.035 mg/L                              977496 / 2066383

**CTR limit is 0.013 mg/L**

**Zinc, Total**
03/13/18 - 0.5 mg/L                                996823 / 2135852
01/09/18 - 0.2 mg/L                                989165 / 2089086
11/16/17 - 0.2 mg/L                                977496 / 2066383

**Annual NAL is 0.26 mg/L**
**CTR limit is 0.12 mg/L**

**Iron, Total**
03/13/18 - 2.9 mg/L                                996823 / 2135852
01/09/18 - 1.1 mg/L                                989165 / 2089086
11/16/17 - 4.8 mg/L                                977496 / 2066383

**Annual NAL is 1.0 mg/L**

**Aluminum, Total**
03/13/18 - 1.4 mg/L                                996823 / 2135852
11/16/17 - 2.0 mg/L                                977496 / 2066383

**Annual NAL is 0.75 mg/L**

**Reporting Period (2016-2017)**

**Copper, Total**
01/23/17 - 0.017 mg/L                              918558 / 1857706
12/08/16 - 0.025 mg/L                              911716 / 1832183
12/23/16 - 0.081 mg/L                              912762 / 1832172

**Annual NAL is 0.0332 mg/L**
**CTR limit is 0.013 mg/L**

**Zinc, Total**
12/08/16 - 0.21 mg/L                                                911716 / 1832183
12/23/16 - 0.25 mg/L                                                912762 / 1832172

**CTR limit is 0.12 mg/L**

**Iron, Total**
01/23/17 - 2.8 mg/L                                                 918558 / 1857706
12/08/16 - 1.9 mg/L                                                 911716 / 1832183
12/23/16 - 7.2 mg/L                                                 912762 / 1832172

**Annual NAL is 1.0 mg/L**

  D. <u>Failure to Sample for All Pollutants of Concern Likely Resulting from Pollution Sources Identified in the SWPPP</u>

 Although the Discharger has identified certain facility-specific activities taking place at the Facility known to be sources for certain pollutants, it fails to identify and test for additional parameters associated with these facility-specific industrial activities. The Discharger identifies "petroleum hydrocarbons" as a potential pollutant source. *See* SWPPP, *Site Description*, pg. 5. To test for the presence of petroleum hydrocarbons in the storm water runoff from the Facility, the Discharger must test for TPHg or TPHd. The Discharger's current practice of testing for Oil & Grease does not include petroleum hydrocarbons. The Discharger should also be testing for 6PPD-quinone, a tire preservative recently discovered to be lethal for Coho Salmon.

 The Facility operates from 6:00 am to 6:00 pm daily. *See* SWPPP, section I.C., pg. 6. "The subject site functions as a central operations center for Ferma. These operations include administration and fleet maintenance for its heavy construction/demolition vehicles and related equipment. A limited amount of material processing occurs onsite, in which used structural steel and aluminum are hydraulically compressed into transportable blocks for recycling." *See* SWPPP, *Site Description*, pg. 5. As the Facility discharges directly to the Alameda County flood control ditch, a tributary of Mowry Slough, it must comply with all water quality objectives, including the CTR. Under the CTR, the limit for zinc is 0.12 mg/L and the limit for copper is 0.013 mg/L.

**3. The Person or Persons Responsible for the Alleged Violation**

 The entity responsible for the alleged violations identified in this Notice is FERMA Corporation as owner and operator of the Facility, as well as those of its employees responsible for compliance with the General Permit.

**4. The Location of the Alleged Violation**

 The location of the various violations of the CWA is the permanent address of the Facility at 6655 Smith Avenue in Newark, California, and including the waters of Mowry Slough, a tributary

of San Francisco Bay, and the Pacific Ocean - navigable waters of the United States.

5.  **The Date or Dates of Violation or a Reasonable Range of Dates During Which the Alleged Activity Occurred**

The range of dates covered by this Notice is October 13, 2016 through the present. This Notice includes all violations which occur after the range of dates covered by this Notice up to the end of trial. Some of the violations are continuous in nature, and therefore each day constitutes a violation.

6.  **The Full Name, Address, and Telephone Number of the Person Giving Notice**

The entity giving this Notice is California River Watch, an Internal Revenue Code § 501(c)(3) nonprofit, public benefit corporation organized under the laws of the State of California, with headquarters located in Sebastopol, California. River Watch's mailing address is 290 S. Main Street, #817, Sebastopol, CA 95472. River Watch is dedicated to protecting, enhancing and helping to restore surface and groundwaters of California including coastal waters, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and educating the public concerning environmental issues associated with these environs.

River Watch may be contacted via email: US@ncriverwatch.org, or through its attorneys. River Watch has retained legal counsel with respect to the issues set forth in this Notice. All communications should be directed to the undersigned.

**REMEDIAL MEASURES REQUESTED**

River Watch believes that at a minimum, implementing the requirements of the General Permit as outlined in this Notice is necessary in order to bring the Facility into compliance with the CWA and reduce the biological impacts from its non-compliance upon public health and the environment.

**CONCLUSION**

The violations set forth in this Notice affect the health and enjoyment of members of River Watch who reside and recreate in the affected community. Members of River Watch may use the affected watershed for recreation, fishing, hiking, nature walks and/or the like. Their health, use, and enjoyment of this natural resource is specifically impaired by the Discharger's alleged violations of the CWA as set forth in this Notice.

The General Permit, in the very first "Standard Condition," states that "Dischargers shall comply with all standard conditions in this General Permit. Permit noncompliance constitutes a violation of the Clean Water Act and the [California] Water Code and is grounds for enforcement action and/or removal from General Permit coverage" (General Permit Section XXI.A). The gravity of ensuring that the Annual Reports submitted to the State of California are complete and accurate

is highlighted by the General Permit requirement that the person signing and certifying the document certifies that "to the best of my knowledge and belief, the information submitted is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations" (General Permit Section XXI.L).

CWA §§ 505(a)(1) and 505(f) provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), §1362(5). An action for injunctive relief under the CWA is authorized by 33 U.S.C. §1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $56,540.00 per day/per violation pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365. *See also* 40 C.F.R. §§ 19.1-19.4. River Watch believes this Notice sufficiently states grounds for filing suit in federal court under the "citizen suit" provisions of CWA to obtain the relief provided for under the law.

The CWA specifically provides a **60-day** "notice period" to promote resolution of disputes. River Watch encourages the Discharger to contact counsel for River Watch within **20 days** after receipt of this Notice to discuss the allegations detailed in this Notice. In the absence of productive discussions to resolve this dispute, or receipt of additional information demonstrating the Discharger is in compliance with the strict terms and conditions of the General Permit, River Watch will have cause to file a citizen's suit under CWA § 505(a) when the 60-day notice period ends.

                Sincerely,

                */s/ Jack Silver*

                Jack Silver

**Service List**

Michael Regan - Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N. W.
Mail Code 1101A
Washington, D.C. 20460

Regional Administrator
U.S. Environmental Protection Agency
Pacific Southwest, Region 9
75 Hawthorne Street
Mail Code ORA-1
San Francisco, CA 94105

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100

F 6655 Holding LLC
Attn: Don Ferrari, Registered Agent for Service
6655 Smith Avenue
Newark, CA 94560-4219